IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:07-CR-55-1F

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) **MEMORANDUM & RECOMMENDATION** |
| | ) |
| JOHN C. ROGERS, JR., | ) |
| Defendant. | ) |

This matter is before the court on Defendant John C. Rogers, Jr.'s Motion to Suppress. [DE-18]. The government has responded, [DE-19], and the court held an evidentiary hearing on April 30, 2008, to develop the record. At the April 30, 2008 hearing, the court heard testimony from Clayton Miller, an officer with the Washington Police Department, who was involved in Roger's arrest. In addition, the defense called Melville Ward and Gerald Wright, two residents of Chocowinity, to testify regarding Officer Miller's reputation in the community and Myra Dymock, an investigator in the Federal Public Defender's Office, to testify about an interview she conducted with a person who lives in the neighborhood where the stop took place. Finally, Rogers took the stand and testified. Accordingly, this matter is ripe for review.

## STATEMENT OF THE FACTS

Rogers is charged with possession of a firearm and ammunition by a felon in violation of 18 U.S.C. § 922(g)(1), and possession of a stolen firearm and ammunition in violation of 18 U.S.C. § 922(j). Rogers was arrested after being stopped by the

1

Chocowinity police for speeding. Rogers asserts that officers performed a warrantless search and seizure of him without probable cause and, accordingly, that any and all evidence seized by law enforcement officers as a result of the search and any statements made should be suppressed. The facts are disputed.

A.  Officer Clayton Miller

At the April 30, 2008 hearing, the government presented the testimony of Officer Clayton Miller. Officer Miller testified to the following facts:

He is currently a police officer with the Washington Police Department and has been a police officer since 2003. He was employed with the Chocowinity Police Department during 2006 and 2007, during the events that gave rise to Roger's arrest.

On April 6, 2007, Officer Miller heard over the radio in his police car that another Chocowinity police officer had made a traffic stop of someone named John Christopher Rogers in the Elks Trailer Park. Officer Miller was familiar with John Rogers from a previous arrest and other brief encounters. Officer Miller went to the traffic stop location. He pulled up beside the stopped vehicle and saw Rogers inside. Officer Miller made eye contact with Rogers but Rogers immediately looked away.

Officer Miller got out of his car and went up to Rogers, who was still in his car. Officer Miller asked Rogers if he had any drugs on him. Rogers answered yes, and said he had a little bit of marijuana in his pocket. Officer Miller then asked Rogers if he had any weapons, and Rogers answered that he did, in the glove compartment. After Rogers acknowledged having drugs and weapon, Officer Miller alerted the other officer on the scene that Rogers had admitted to having a gun and drugs.

Officer Miller told Rogers to get out of the car, and arrested him. He asked Rogers

2

where the drugs were, and Rogers pulled a plastic bag out of his pocket. Rogers was taken into custody. Officer Miller searched Rogers' car and found a .45 caliber handgun in the glove compartment.

Officer Miller stated that in 2003, while he was still in police training, he was involved in a vehicle stop of Rogers. Officer Miller acted as a backup unit during a vehicle chase and reached Rogers car after it had been stopped by other officers. Officer Miller arrested Rogers and asked him if he had any weapons or drugs. Rogers told Officer Miller that he had a nightstick under the driver's seat and that he had drugs in his pockets.

B.  Melville Ward

Next, Melville Ward, a friend of Rogers, testified. He lives in the Elks Trailer Park, where Rogers was arrested in 2007. Ward stated that he has never been stopped by Officer Miller, but that he has heard that Officer Miller has a reputation for making traffic stops for no reason. Ward stated that his girlfriend had been pulled over by Officer Miller in a traffic stop and she felt that Officer Miller had made up an excuse to pull her over. Ward testified that he was not present when Rogers was arrested and had never had any interaction with Officer Miller personally.

C.  Gerald Wright

Gerald Wright, another friend of Rogers, testified next. He stated that he lives on Highway 17 in Chocowinity, but used to live in the Elks Trailer Park. He testified that on April 6, 2007, he was going to the Elks Trailer Park to visit friends and he saw Rogers standing at the back of a police officer's car. Rogers had already been arrested. Wright did not see Rogers get pulled over, or the events that transpired before Rogers was in custody. Wright testified that he had never had any personal dealings with Officer Miller

3

but that Officer Miller had the reputation of being cocky and aggressive.

D. John Christopher Rogers, Jr.

Next, Defendant John Christopher Rogers, Jr., testified. He testified to the following facts: Rogers was driving a black Pontiac Grand Prix on April 6, 2007. He doesn't know how fast he was going. He was stopped by an officer in Elks Trailer Park; the officer asked him for his driver's license, registration and insurance.

Shortly thereafter, Officer Miller pulled up next to Rogers' car. Rogers had seen Officer Miller approximately five or six times over the last four years and recognized him. The first time Rogers encountered Officer Miller was in April 2003, when Officer Miller was involved in arresting him for a drug possession charge after a traffic stop. In 2003, Rogers was pulled over and an officer asked him if he had any weapons or drugs on him. The 2003 report written by Officer Miller stated that Rogers informed Officer Miller that Rogers had a nightstick underneath his driver's seat, and that Rogers told Officer Miller after being searched for weapons, that he had drugs in his pockets. At the hearing, Rogers stated that the 2003 report was incorrect because he never told the officers about the nightstick under his seat.

After his arrest in 2003, Rogers saw Officer Miller approximately four or five other times. In April 2007, Rogers was pulled over for speeding in the Elks Trailer Park. Officer Miller arrived shortly after he was pulled over and drove his patrol car in front of Rogers' car. Officer Miller got out of his car, came up to Rogers, and asked Rogers how he was doing. At the same time, Officer Miller was looking around inside of Rogers' car, and seemed to be looking for a reason to search Rogers. Officer Miller asked Rogers if he had anything on him, and Rogers responded that he did not. Officer Miller told Rogers to be

4

honest with him and said "I've busted you before so I know you've got something." Officer Miller asked Rogers if he had any weapons on him. Rogers told him that he did not. Officer Miller asked Rogers if he would mind if Officer Rogers searched Rogers' car. Rogers replied that he did mind. Officer Miller told Rogers to get out of his car and then searched the front driver and front passenger seat area. Rogers testified that he did not give permission for Officer Miller to search his car and did not tell Officer Miller that he had a gun.

After the search, Officer Miller said "we've got a gun, we've got a gun." Rogers placed his hands up and the other officer at the scene, who had originally pulled Rogers over, came over to him with handcuffs. After Rogers was arrested, the officers patted him down and found some marijuana in his pocket. Rogers was placed in a patrol car and the officers searched his car again.

Rogers testified that he did not admit to Officer Miller that he had a gun or drugs and did not give him permission to search his car. Rogers said that he would not have answered those questions truthfully because he knew from past experience that Officer Miller was not to be trusted.

E.  Myra Dymock

Finally, Myra Dymock, an investigator with the Federal Public Defender for Eastern North Carolina, testified. She stated that she had been investigating the Rogers case and had gone to the Elks Trailer Park to interview potential witnesses to the arrest. She said she spoke to Carolyn Faison, a woman who lives near the location where Rogers was arrested. Dymock stated that Carolyn Faison said that there had been a few incidents where people had been pulled over in front of her home. In particular, she remembered

5

a green car and a black car having been pulled over. Dymock said that Carolyn Faison did not remember the exact date, but that she had been coming home from church one night and saw a black car that was pulled over by her house; Faison remembered a man saying "why are you searching me? Why are you going through my car?" Dymock testified that Carolyn Faison was 52 years old and did not know Rogers.

## DISCUSSION

Rogers filed the current motion to dismiss asserting that he was subjected to a warrantless search of his car and person. As both Rogers and the government agree, the issue before the court is one of credibility. The testimony of Rogers and Officer Miller cannot both be true, as key factual allegations differ. Specifically, Officer Miller claims that he asked Rogers if he had drugs on him, and Rogers answered that he had some marijuana. Then Officer Miller asked Rogers if he had any weapons, and Rogers admitted that he had a gun in the glove compartment. According to Officer Miller, when Rogers exited the vehicle, he reached into his pocket and showed Officer Miller a small bag of marijuana. Rogers asserts that the arrest happened very differently. He claims that he never told Officer Miller that he had drugs or a weapon in his car, and never consented to a search of his car. Rogers testified that Officer Miller searched his car before discovering the marijuana on him.

The discrepancies in the stories are crucial because if Officer Miller searched Rogers car without Rogers first telling Officer Miller that he had drugs and a weapon, then Officer Rogers would not have had probable cause to search the car. The Fourth Amendment protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV. Generally, during a routine traffic stop, an officer is limited to requesting "a

6

driver's license and vehicle registration, run[ning] a computer check, and issu[ing] a citation." United States v. Rusher, 966 F.2d 868, 876-77 (4th Cir. 1992). However, if there is probable cause to believe that a vehicle contains contraband, an officer may search a stopped vehicle. See Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.").

The issue before the court, then, is one of credibility. See United States v. Stevenson, 396 F.3d 538, 542-43 (4th Cir. 2005) (noting that assessing the credibility of witnesses is the province of the district court). After observing the testimony of the witnesses at the hearing and assessing their demeanor on the stand, particularly that of both Officer Miller and Rogers, the court credits Officer Miller's version of events. Conversely, the court does not find the testimony of Rogers to be credible. Officer Miller has been a police officer for five years. The court conducted an in camera review of his personnel file and found that there were no substantiated complaints against him. Officer Miller unequivocally testified that Rogers told him about the gun and the marijuana in his pocket.

On the other hand, Rogers testified and defense counsel argued, that Rogers would never have told Officer Miller the truth about the gun and marijuana because he was involved in a similar incident in 2003 where a traffic stop led to the police discovering a weapon and drugs on Rogers. Rogers testified that like Officer Miller's testimony at the April 20, 2007 hearing, the report written by Officer Miller about Roger's 2003 arrest was also untrue and that in both cases he never told the police about a weapon or drugs.

The court is unconvinced that Officer Miller has now misrepresented the facts of a

7

stop and arrest of Rogers for the second time. Officer Miller's testimony was consistent and detailed. Moreover, the court notes that although Rogers now claims that the 2003 report made by Officer Miller was untrue, he nevertheless pleaded guilty to the 2003 charges. Additionally, neither of the defense witnesses who testified as to Officer Miller's reputation in the community had ever met him or had any dealings with him. Finally, the testimony of Myra Dymock regarding Carolyn Faison was unpersuasive because there was no indication or evidence that the individual in front of Faison's house who asked the police officer why he was being searched was Rogers. Carolyn Faison did not provide a date, a car description–other than color, a description of Rogers, or any corroborating detail to Dymock. For the foregoing reasons, the court recommends that Officer Miller's testimony concerning the events in issue be deemed more credible and that Rogers motion to suppress be denied. See United States v. Stevenson, 396 F.3d 538, 542-43 (4th Cir. 2005) (noting that assessing the credibility of witnesses is the province of the district court).

## CONCLUSION

For the reasons set forth above, the court **RECOMMENDS** that Roger's Motion to Suppress be **DENIED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum. Additionally, except upon grounds of plain error, failure to timely file written objections shall bar a party from attacking on appeal the proposed factual findings

8

Case 4:07-cr-00055-F   Document 28   Filed 05/21/08   Page 8 of 9

and legal conclusions not objected to, and accepted by, the District Court.

This 21st day of May 2008.

DAVID W. DANIEL
United States Magistrate Judge